1
2
3
4

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

5    **BENJAMIN P. SALVIO, Individually and as**                   :
6    **Administrator of the Estate of**
7    **JANINE M. TRAGESSER, Deceased**
8    426 8th Avenue                                                :
9    Sutersville, PA 15083
10
11                          v.                                     :
12
13   **AMGEN, INC.,** *a Delaware corporation*              CA No.:
14   One Amgen Center Drive                                        :
15   Thousand Oaks, CA 91320
16
17          *Serve*: CSC Lawyers Incorporating Service            :
18                10 Universal City Plaza
19                Universal City, CA 91608
20                                                                 :
21   **IMMUNEX, INC.**
22          *a wholly owned subsidiary of AMGEN, INC.*
23   One Amgen Center Drive                                        :
24   Thousand Oaks, CA 91320
25
26          *Serve*: CSC Lawyers Incorporating Service            :
27                10 Universal City Plaza
28                Universal City, CA 91608
29                                                                 :
30   **WYETH, LLC,** *a Delaware corporation*
31   5 Giralda Farms
32   Madison, NJ 07940-1021                                        :
33
34          *Serve*: Corporation Trust Company
35                820 Bear Tavern Rd                              :
36                Ewing, NJ 08628
37
38   **PFIZER, INC.,** *a Delaware corporation*                   :
39   235 East 42nd Street
40   NY, NY 10017
41                                                                 :
42          *Serve*: C T Corporation System
43                111 Eighth Avenue
44                New York, New York, 10011                       :
45
46   _____
47

48                         **CIVIL ACTION COMPLAINT**

49         Plaintiff Benjamin P. Salvio, Individually and as Administrator of the estate of his

50     mother Janine M. Tragesser, deceased, residing at 426 8th Avenue, Sutersville, PA

51     15083, by way of this Complaint against the Defendants, states:

52                             **PARTIES**

53         Plaintiff Benjamin P. Salvio (hereinafter "Plaintiff"), is an adult individual

54     residing at 426 8th Avenue, Sutersville, PA 15083.

55         Plaintiff's mother and decedent, Janine M. Tragesser, died on May 13, 2010 as a

56     result of the factual events that form the basis of this complaint.

57         Benjamin P. Salvio was appointed Administrator of the estate of his mother

58     Janine M. Tragesser by the Orphans' Court of Westmoreland County, Pennsylvania, on

59     July 26, 2010.

60         Defendant Amgen, Inc. was and is a Delaware corporation that regularly

61     conducts business in the state of Pennsylvania through its own divisions, branches,

62     subsidiaries and other wholly or substantially owned entities. It is the successor in

63     interest to defendant Immunex, Inc.

64         Defendant Immunex, Inc. is a corporation wholly owned by Amgen. Immunex

65     does business, and at all relevant times did conduct business, in the state of

66     Pennsylvania either through its parent defendant Amgen, or through its own divisions,

67     branches, subsidiaries and other wholly or substantially owned entities.

68         Both Amgen and Immunex are biopharmaceutical companies that are engaged in

69     the design, manufacture, production, testing, study, inspection, mixture, labeling,

70     marketing, advertising, sales, promotion, and/or distribution of pharmaceutical

71     products, including Enbrel, throughout the United States, and derives substantial

72   revenue from these activities.

73        Defendant Wyeth, LLC is a Delaware corporation that regularly conducts

74   business in the state of Pennsylvania through its own divisions, branches, subsidiaries

75   and other wholly or substantially owned entities. For the purposes of this litigation,

76   Wyeth represents all of its divisions, branches, subsidiaries and other wholly or

77   substantially owned entities that engage in business and commerce regarding this drug.

78   Wyeth, among other things, is a biopharmaceutical company that is engaged in the

79   design, manufacture, production, testing, study, inspection, mixture, labeling,

80   marketing, advertising, sales, promotion, and/or distribution of pharmaceutical

81   products, including Enbrel, throughout the United States, and derives substantial

82   revenue from these activities.

83        Defendant Pfizer, Inc. was and is a Delaware corporation that regularly conducts

84   business in the state of Pennsylvania through its own divisions, branches, subsidiaries

85   and other wholly or substantially owned entities. It is the successor in interest to Wyeth.

86   For the purposes of this litigation, Pfizer represents all of its divisions, branches,

87   subsidiaries and other wholly or substantially owned entities that engage in business

88   and commerce regarding this drug. Pfizer, among other things, is a biopharmaceutical

89   company that is engaged in the design, manufacture, production, testing, study,

90   inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or

91   distribution of pharmaceutical products, including Enbrel, throughout the United States

92   and internationally, and derives substantial revenue from these activities.

93        At all relevant times, defendants, and each of them, were the agents, servants,

94   joint venturers, partners, parents, subsidiaries, successors, and/or representatives of

95   each other and, in participating in the acts and omissions hereinafter alleged, were

96   acting within the scope and course of their authority as such agents, servants, joint

97   venturers, partners, parents, subsidiaries, successors, and/or representatives, and were

98   acting with the permission and consent of each other. Together, these defendants acted

99   in concert and/or aided or abetted each other and/or conspired to engage in the

100  common course of misconduct alleged herein for the purpose of enriching themselves at

101  the expense of the plaintiffs.

102  ### JURISDICTION AND VENUE

103      This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

104  1332 (diversity of citizenship). The matter in controversy in this civil action exceeds the

105  sum or value of $75, 000, exclusive of costs and interests, as to each defendant, and is

106  between citizens of different states.

107      Venue is proper in this district under 28 U.S.C. § 1391 because Defendants

108  transact business in this district.

109  ### FACTUAL ALLEGATIONS
110
111  Plaintiff's Injuries and Death
112
113      Plaintiffs incorporate by reference the previous paragraphs as if fully restated

114  herein.

115      Decedent Janine M. Tragesser suffered from rheumatoid arthritis. Defendants

116  market and sell Enbrel to both doctors and the public to relieve painful and physically

117  challenging symptoms of rheumatoid arthritis. Starting no later than 2005, plaintiff

118  Tragesser asked her doctor to prescribe Enbrel believing that, based on direct-to-

119  consumer media advertising of Enbrel, it would provide safe relief.

120      As a result of years of ingesting this drug, plaintiff's immune system was

121  damaged, resulting in Plaintiff developing a disease called mucormycosis (also

122 sometimes referred to as zygomycosis), a fungal infection of the sinuses, brain, and

123 lungs that occurs mostly in people with weakened immune systems. Mortality rate for

124 this disease is approximately 80% shortly after diagnosis. The infection caused

125 significant respiratory problems for Ms. Tragesser, severely damaging her lungs, making

126 it painful and difficult even to talk, and causing other personal injuries and damages.

127      Plaintiff was forced to have over 20 hospitalizations and costly medical

128 treatments totaling over $2.5 million just to survive.

129      It was not until May 2008 that the FDA posted its demand that the Defendants

130 revised and strengthen its "black box" warning about infections, including serious

131 infections leading to hospitalization or death that have been observed in patients treated

132 with Enbrel. Plaintiff Tragesser never was told about this serious risk when she began

133 taking Enbrel in 2005. Had she known, given here co-morbidity factors such as

134 diabetes, she would not have risked her life by taking Enbrel, and would have used

135 another treatment regimen that was safer.

136      Decedent Tragesser continued to suffer from severe and debilitating medical

137 problems, and a very poor quality of life caused by ingesting this drug.

138      Believing that the Defendants would take responsibility for marketing and selling

139 a drug to her that made her extremely ill, she entered into a tolling agreement that, with

140 extensions, permitted the Defendants to review her medical records and contentions

141 from February 24, 2010 until March 28, 2011.

142      During this period, on May 13, 2010, plaintiff Tragesser died from complications

143 directly related to taking the drug Enbrel.

144      Unable to convince Defendants to accept responsibility for the death of his

145 mother, decedent Tragesser's only child and heir, Benjamin P. Salvio, brings this legal

146   action for himself and his mother's estate as Administrator.

147                         <u>Defendants' Misconduct</u>

148       As a result of their participation in various joint ventures, parent/subsidiary

149   relationships, and or successor corporation relationships, Defendants are jointly and

150   severally liable to Plaintiffs.

151       Enbrel is a biological product (a genetically engineered antibody) that reduces the

152   actions of chemicals in the body that are involved in inflammatory and immune system

153   responses.

154       Enbrel inhibits the action of tumor necrosis factor (TNF), a component of the

155   body's natural defenses against serious infections.

156       On or about November 2, 1998, Defendants began to market, advertise, distribute

157   and sell Enbrel.

158       Upon information and belief, once Enbrel was introduced into the market,

159   Defendants began to receive reports of, among other things, serious infections requiring

160   hospitalizations, infections leading to death, increased tuberculosis, increased rates of

161   cancer, including cancer in teenage patients, and congestive heart failure that Enbrel

162   users were suffering as adverse events related to their Enbrel use.

163       In fact, within 5 months of the licensure of Enbrel, post-marketing reports

164   documented 30 serious infections including 6 deaths. Information provided by the

165   defendants indicate that a large proportion of cases occurred in people with one or more

166   potential risk factors of serious infections, including diabetes, active infections, and a

167   history of chronic recurrent infections.

168       At all times relevant hereto, Defendants knew or should have known that Enbrel

169   causes it users to suffer, among other ailments, serious infections leading to death,

170    congestive heart failure, tuberculosis and increased rates of cancer including lymphoma.

171         Defendants purposely ignored and/or understated the risk of such serious

172    infections, congestive heart failure, tuberculosis and increased rates of cancer due to

173    Enbrel's use in its labels, package inserts, advertisements, marketing and other

174    promotional materials.

175         Although Defendants knew or should have know that dangerous risks were

176    associated with the use of Enbrel, defendants proceeded to and/or permitted Enbrel to

177    be advertised, promoted, distributed and/or sold without adequate warnings of the

178    serious side effects and dangerous risks associated with its use.

179         At all material times, each Defendant was responsible for designing,

180    manufacturing, producing, testing, studying, inspecting, mixing, labeling, marketing,

181    advertising, selling, promoting and/or distributing Enbrel described herein, which

182    Plaintiff Janine Tragesser, now deceased, ingested.

183         Each Defendant, therefore, had an independent obligation to know, analyze and

184    disclose scientific and medical information about Enbrel in a timely and adequate

185    manner, and to provide warnings about risks and side effects as soon as it was aware of

186    them. Each Defendant failed to do so with respect to the Enbrel that Plaintiff ingested,

187    including by failing to know, analyze, and/or disclose an increased risk of fungal

188    infections that can spread throughout the body causing serious injury leading to death

189    as soon as it became aware of such risk.

190         Each Defendant made claims regarding the health benefits of ingesting Enbrel,

191    and the risks and side effects of this drug. Each Defendant knew or should have

192    known that these claims were false, misleading and incomplete. They failed to

193    adequately disclose the true health consequences, and the true risks and side effects

7

194   from this drug, including the risk of fatal fungal infections that can spread throughout

195   the body, and subsequent death resulting from such infections.

196        Each Defendant knew or should have known that, at all material

197   times, its communications about the benefits, risks, and adverse effects of Enbrel,

198   including communications in labels, advertisements both to doctors and to the public,

199   and promotional materials, were materially false, misleading and incomplete.

200        Plaintiff would not have ingested Enbrel, or would have discontinued its use, or

201   would have used safer alternative treatment methods, had Defendants disclosed the true

202   health consequences, risks and adverse events, including the risk of fatal fungal

203   infections that can spread throughout the body, and subsequent death resulting from

204   such infections, had defendants been truthful regarding its marketing, advertising and

205   sale of Enbrel.

206        Defendants, instead, advertised Enbrel as safe and effective in the treatment of

207   arthritis.

208        Each Defendant's nondisclosures and misrepresentations as alleged herein were

209   material, and were substantial factors that contributed directly and causally, and

210   naturally and necessarily, to the serious injuries and damages that Plaintiff Janine

211   Tragesser has suffered.

212   <u>Defendants' Misconduct Motivated by Profits</u>

213        As noted above, Defendants' warnings to prescribing doctors and consumers

214   about the actual risks of Enbrel were materially false, misleading and incomplete. For

215   example, as noted above, Defendants were forced by the FDA to revise and strengthen

216   its "black box" warning about infections, including among other things, serious

217   infections leading to hospitalization or death that have been observed in patients treated

218   with Enbrel. Before this crucial warning, a prescribing doctor or a customer reviewing

219   media advertising or marketing of Enbrel would not have known that for some

220   customers, ingesting the drug could be fatal, or cause extreme illness requiring extensive

221   hospitalization.  This admission and change in promoting, advertising and marketing

222   the drug belatedly came 10 years after Enbrel was first marketed in the U. S., and several

223   years after plaintiff ingested it.

224        Defendants' material nondisclosures and misrepresentations as alleged herein

225   were made because Defendants were and are highly motivated to maintain Enbrel's

226   gross sales and the financial benefit that they receive as a result of Enbrel's highly

227   profitable status as a top 10 "blockbuster" drug in gross revenue.

228        For example, from 2005, when plaintiff Tragesser first began to take Enbrel,

229   through 2008, the year that she contracted the deadly infection murcomycosis,

230   Defendants' gross North American sales in Enbrel alone averaged $3.475 billion per

231   year. Additional yearly profits in the billions were made in overseas sales of the drug.

232        Defendants, therefore, did not want adverse media attention informing

233   customers that, if they took Enbrel, they could develop serious infections requiring long

234   and expensive hospitalizations, and possibly die. Such information might frighten

235   customers, cause concern among Wall Street investors, and affect negatively the

236   Defendants' bottom line.

237        If Defendants' bottom line were affected, their ability to pay senior executive high

238   salaries also might be affected. For example, according to Forbes 2010 list of highly paid

239   CEOs, Kevin W. Sharer, CEO of defendant Amgen, has received a 5-year compensation

240   total of $61.81 million dollars.

241        Further, Defendants desire to make as much money as possible over the next few

242   years because they will lose their patent and exclusive right to produce, market and sell

243   Enbrel in 2012, thus permitting other manufacturers to enter the market with lower cost

244   generic options for consumers.

245       Defendants', therefore, made a conscious decision not to disclose the actual risks

246   and adverse reactions of Enbrel to plaintiff Tragesser and to all other consumers. This

247   decision to place "profits over people" led to plaintiff's lengthly illness, poor quality of

248   life, and death.

249              <u>Defendants' Fraudulent Concealment of the Harm</u>

250       Any applicable statutes of limitations have been tolled by the knowing and active

251   concealment and denial of material facts about Enbrel's problems known by Defendants

252   when they had a duty to disclose those facts. They have kept Plaintiffs and other

253   consumers ignorant of vital information essential to their pursuit of these claims,

254   without any fault or lack of diligence on Plaintiffs' part. Their fraudulent concealment

255   did result in such delay. The Defendants are and were under a continuing duty to

256   disclose the true character, quality and nature of the drug that Plaintiff ingested, but

257   instead they concealed them. As a result, Defendants are estopped from relying on any

258   statute of limitations defense.

259                        **CLAIMS FOR RELIEF**

260                     **First Claim Against All Defendants**
261                             **(Negligence)**
262
263       Plaintiff realleges all previous paragraphs.

264       Defendants introduced the drug Enbrel described herein into the stream of

265   commerce. At all material times, Defendants had a duty to Plaintiff and other

266   consumers of their drug to exercise reasonable care in order properly to design,

267  manufacture, produce, test, study, inspect, mix, label, market, advertise, sell, promote

268  and distribute this product. This includes a duty to warn of side effects, and to warn of

269  the risks, dangers and adverse events associated with Enbrel.

270        Defendants knew, or in the exercise of reasonable care should have known, that

271  Enbrel was of such a nature that it were not properly designed, manufactured,

272  produced, tested, studied, inspected, mixed, labeled, marketed, advertised,

273  sold, promoted and distributed and it was likely to cause injury to many who ingested

274  it.

275        Defendants were negligent in the design, manufacture, production, testing, study,

276  inspection, mixture, labeling, marketing, advertising, sales, promotion and distribution

277  of Enbrel, and breached their duty to Plaintiff. In particular, Defendants:

278      a) Failed to use due care in the preparation of Enbrel to prevent the aforementioned
279         risks to consumers who ingested the drug;
280

281      b) Failed to use due care in the design of Enbrel to prevent the aforementioned risks
282         to consumers who ingested the drug;
283

284      c) Failed to conduct adequate pre-clinical testing and research to determine the
285         safety of Enbrel;
286

287      d) Failed to conduct adequate post-marketing surveillance to determine the safety of
288         Enbrel;
289

290      e) Failed to accompany their product with proper warnings regarding all possible
291         adverse side effects associated with the use of their drug and the comparative
292         severity and duration of such adverse effects;
293

294      f) Failed to use due care in the development of Enbrel to prevent the
295         aforementioned risks to consumers who ingested the drug;
296

297      g) Failed to use due care in the manufacture of Enbrel to prevent the
298         aforementioned risks to consumers who ingested the drug;
299

300      h) Failed to use due care in the inspection of Enbrel to prevent the aforementioned
301         risks to consumers who ingested the drug;
302

303    i)  Failed to use due care in the labeling of Enbrel to prevent the aforementioned
304        risks to consumers who ingested the drug;
305
306    j)  Failed to use due care in the marketing of Enbrel to prevent the aforementioned
307        risks to consumers who ingested the drug;
308
309    k)  Failed to use due care in the promotion of Enbrel to prevent the aforementioned
310        risks to consumers who ingested the drug ;
311
312    l)  Failed to use due care in the selling of Enbrel to prevent the aforementioned risks
313        to consumers who ingested the drug;
314
315    m) Failed to provide adequate information to healthcare providers and consumers
316        for the appropriate use of Enbrel;
317
318    n)  Failed adequately to warn about the health consequences, risks and adverse
319        effects caused by Enbrel; and
320
321    o)  Were otherwise careless and negligent.
322
323        Defendants knew or should have known that Enbrel caused unreasonable harm

324    and dangerous side effects that many consumers would be unable to remedy

325    by any means. Despite this, Defendants continued to promote and market Enbrel for use

326    by consumers, including Plaintiff, when safer alternatives were available. Further, the

327    Defendants promoted, advertised and marketed this drug both to healthcare providers

328    and directly to consumers.

329        It was foreseeable to Defendants that consumers, including Plaintiff, would suffer

330    injury as a result of Defendants' failure to exercise ordinary care as described herein.

331        As a direct and proximate result of Defendants' conduct, Plaintiff suffered the

332    injuries and damages specified herein.

333                    **Second Claim Against All Defendants**
334                    **(Strict Liability: Design Defect)**
335
336        Plaintiff realleges all previous paragraphs.

337        Defendants manufactured, sold and supplied Enbrel described herein, and at all

338  material times were in the business of doing so. They placed this drug into the stream of

339  commerce. This drug was expected to, and did, reach Plaintiff without substantial

340  change in its condition. Plaintiff ingested this drug.

341      At the time Enbrel left Defendants' hands, this drug was in a

342  condition not contemplated by Plaintiff, and was unreasonably dangerous to her. Enbrel

343  was dangerous to an extent beyond that which would be contemplated by the ordinary

344  consumer who purchased it. It was more dangerous than Plaintiff contemplated. Under

345  such circumstances, the risks of Enbrel outweighed its utility. There were practicable,

346  feasible and safer alternatives to the Defendants' Enbrel.

347      Defendants' drug is defective and unreasonably dangerous and was a producing

348  cause of the Plaintiff's injuries and damages specified herein. Defendants must be held

349  strictly liable for its design defect.

350                  **Third Claim Against All Defendants**
351                  **(Strict Liability: Failure to Warn)**
352
353      Plaintiff realleges all previous paragraphs.

354      Defendants manufactured, sold and supplied Enbrel described herein,

355  and at all material times were in the business of doing so. They placed this drug into

356  the stream of commerce. This drug was expected to, and did, reach Plaintiff without

357  substantial change in its condition. Plaintiff ingested this drug.

358      When Defendants placed Enbrel into the stream of commerce, they

359  failed to accompany it with adequate warnings. They failed to warn of the true risks

360  and dangers, and of the symptoms, scope and severity of the potential side effect of the

361  drug Plaintiff ingested. These risks, dangers and side effects include, but are not limited

362  to serious infections requiring hospitalizations, and death.

363   Due to the inadequate warnings as alleged herein, at the time Enbrel

364   left Defendants' hands, this drug was in a condition not contemplated by Plaintiff, and

365   was unreasonably dangerous to her. It was dangerous to an extent beyond that

366   which would be contemplated by the ordinary consumer who purchased it. It was

367   more dangerous than Plaintiff contemplated. Furthermore, under such circumstances,

368   its risks outweighed its utility.

369   Defendants' drug described herein is defective and unreasonably dangerous.

370   Had Defendants provided adequate warnings and instructions, Plaintiff would

371   not have ingested this drug and would not have suffered the personal injuries and would

372   not have died.

373   Defendants must be held strictly liable for its failure to warn plaintiffs of Enbrel's

374   actual risks and adverse events. Defendants' Enbrel is defective and unreasonably

375   dangerous and was a legal cause, proximate cause and a substantial factor of Plaintiff's

376   injuries and damages specified herein.

377
378   **Fourth Claim Against All Defendants**
379   **(Breach of Express Warranty)**
380
381   Defendants placed Enbrel into the stream of commerce for sale and

382   recommended its use to doctors and consumers without adequately warning doctors,

383   the FDA, and consumers including the decedent, of the risks associated with its use.

384   Defendants had a duty to exercise reasonable care in selling, promoting,

385   marketing, labeling, testing, designing, manufacturing or distributing Enbrel including a

386   duty to:

387   a) Ensure that the product did  not cause the user unreasonably dangerous

388   consequences;

389   b)  Warn of risks; and

390   c)  Disclose adverse material facts when making representations to doctors, the

391   FDA, and the public at-large, including the deceased plaintiff.

392        The decedent and her doctor reasonably relied on the Defendants and their

393   agents to disclose known defects, risks, and dangers of Enbrel.

394        The decedent's doctors, the FDA, and the decedent had  no knowledge of  the

395   falseness or incompleteness of the Defendants' statements and representations

396   concerning the product at issue. Decedent justifiably and detrimentally relied on the

397   warranties and representations of the Defendants regarding the product at issue.

398        Defendants were under a duty to disclose the defective and unsafe nature of the

399   product at issue to doctors, the FDA, consumers, and users such as the deceased Janine

400   Tragesser. Defendants had sole access to material facts concerning the defects, and

401   Defendants knew that doctors, the FDA, and consumers such as Janine Tragesser, could

402   not have reasonably discovered such defects.

403        By their acts and omissions, Defendants, their agents and employees, expressly

404   warranted to Janine Tragesser and her doctors that the product was merchantable and

405   fit for the purpose intended.

406        This warranty was breached because the product at issue was not safe and

407   effective as Defendants presented, and plaintiff Janine Tragesser was injured and died

408   as a result.

409        As a direct result of Defendants' acts and omissions, as described herein, Janine

410   Tragesser suffered severe personal injuries, pain and suffering, severe emotional

411   distress and harm, and death.

412

413          **Fifth Claim Against All Defendants**
414            **(Breach of Implied Warranty)**
415
416     Plaintiff realleges all previous paragraphs.

417     At the time Defendants designed, manufactured, produced, tested, studied,

418     inspected, mixed, labeled, marketed, advertised, sold, promoted and distributed their

419     Drug for use by Plaintiff, they knew of the use for which this drug was intended,

420     and impliedly warranted this product to be of merchantable quality and safe and fit for

421     its intended use.

422     Contrary to such implied warranty, this drug was not of merchantable quality

423     or safe or fit for intended use because it was and is unreasonably dangerous and

424     unfit for the ordinary purposes for which it was and is used, as alleged herein.

425     As a direct and proximate result of Defendants' conduct, Plaintiff suffered the

426     injuries and damages specified herein.

427          **Sixth Claim Against All Defendants**
428     **(Gross Negligence/Malice Warranting Punitive Damages)**
429

430     Plaintiff realleges all previous paragraphs.

431     The wrongs done by Defendants were aggravated by the kind of malice, fraud and

432     reckless disregard for the rights of others, the public and Plaintiff for which the law

433     allows the imposition of exemplary or punitive damages, in that Defendants' conduct:

434     a) Was specifically intended to cause substantial injury to Plaintiff; or
435
436     b) When viewed objectively from Defendants' standpoint at the time of the conduct,
437     involved an extreme degree of risk, considering the probability and magnitude of the
438     potential harm to others, and Defendants were actually, subjectively aware of the
439     risk involved, but nevertheless proceeded with conscious indifference to the rights,
440     safety, or welfare of others; or
441
442     c) Included a material representation that was false, with Defendants knowing that
443     it was false or with reckless disregard as to its truth and as a positive assertion, with

16

444  the intent that the representation be acted on by Plaintiff. Plaintiff relied on the
445  representation and suffered injury as a proximate result of this reliance.
446
447      Plaintiff therefore seeks exemplary damages in an amount within the

448  jurisdictional limits of the Court. Plaintiff also alleges that the acts and omissions of

449  named Defendants, whether taken singularly or in combination with others, constitutes

450  gross negligence which proximately caused the injuries to Plaintiff. In that regard,

451  Plaintiff seeks exemplary or punitive damages in an amount that would punish

452  Defendants for their conduct and which would deter other Defendants from engaging in

453  such misconduct in the future.

**Seventh Claim Against All Defendants**
454  **(Survival Action)**
455
456
457      Plaintiff realleges all previous paragraphs.
458
459      Plaintiff Benjamin P. Salvio has the right to bring the following survival action on

460  behalf of the Estate of the Decedent under the Pennsylvania Survival Statute, 42

461  Pa.C.S.A. § 8302, and pursuant to 20 Pa.C.S.A. § 3373.

462      Due to the aforesaid conduct of the Defendants, Janine Tragesser, during her life,

463  was harmed by a serious infection called mucormycosis requiring lengthy and numerous

464  hospitalizations. It ultimately was responsible for her ultimately death.

465      As a result of the aforesaid conduct of the Defendants, the late Janine Tragesser

466  suffered a substantial increase in the risk of early death and a substantial shortening of

467  her life expectancy.

468      As a result of the aforesaid conduct of the Defendants, the late Janine Tragesser

469  was not able to perform any activities of daily living and was permanently impaired.

470      As a result of the aforesaid conduct of the Defendants, the late Janine Tragesser's

471  and her estate incurred substantial medical bills for her treatment, as referenced

17

472   hereinbefore.

473   As a result of the aforesaid conduct of the Defendants which caused the above

474   impairments and increased risk of death, Janine Tragesser had a loss of earnings and

475   earning capacity during her life and her Estate continues to suffer a loss of earnings and

476   earning capacity.

477   As a direct and proximate result of the negligence of the Defendants, the late

478   Janine Tragesser suffered a permanent diminution of her ability to enjoy life and life's

479   pleasures, and suffered severe pain and emotional distress.

480   The untimely death of Janine Tragesser on May 13, 2010 was caused by the

481   intentional and negligent conduct of the Defendants.

482   Plaintiff claims damages for related medical expenses for her treatment prior to

483   her death. She also claims the loss of Decedent's net earnings from the date of death

484   until the respective remainder of her work life and further claims all damages

485   recoverable under the Pennsylvania Survival Statute.

486   Plaintiff Salvio claims on behalf of the Estate of Janine Tragesser all damages

487   suffered by the Estate by reason of the death of the Decedent, as well as for pain and

488   suffering and fear of impending death the Decedent experienced prior to her death.

489   In addition, Plaintiff claims all other damages recoverable under the

490   Pennsylvania Survival Statute.

491
492                          **Eighth Claim Against All Defendants**
493                              **(Wrongful Death Action)**
494
495   Plaintiff realleges all previous paragraphs.
496
497   Plaintiff Benjamin P. Salvio has the right to bring the following Wrongful Death

498   Action on behalf of the wrongful death beneficiaries under the Pennsylvania Wrongful

499   Death Statute, 42 Pa.C.S.A. § 8301, and pursuant to Pa.R.C.P. 2202(a).

500   Plaintiff Benjamin Salvio is the only person entitled to recover wrongful death

501   damages as a result of the death of the Decedent. At the time of her death, Janine

502   Tragesser had no other children and was not married.

503   Plaintiff claims damages from Defendants under and by virtue of the

504   Pennsylvania Wrongful Death Statute for the pecuniary value of future services,

505   support, society, comfort, and contribution of the Decedent that would have been

506   rendered to him as sole wrongful death beneficiary for the expected remainder of his

507   life.

508   Plaintiff further demands payment for funeral and burial expenses.

509   In addition, Plaintiff demands payment for all economic losses suffered by him as

510   the Decedent's sole statutory survivor including costs of administration and other

511   expenses reasonably associated with the Decedent's death.

512
513                              **PRAYER FOR RELIEF**

514   WHEREFORE, Plaintiffs seeks judgment in their favor against the Defendants,

515   jointly and severally, as follows:

516   a)  Economic and non-economic damages in an amount in excess of $75,000.00 as

517   to each Defendant as provided by law and to be supported by the evidence at trial;

518   b)  Loss of wages and benefits in the past and loss of future wages and earning

519   capacity in the future;

520   c)  Reasonable and necessary medical and other health care related expenses;

521   d)  Physical pain and suffering;

522   e)  Physical disfigurement;

523   f)  Physical impairment;

524   g)  Mental anguish;

525   h)  Exemplary and punitive damages;

526   i)  Costs of court;

527   j)  Attorneys' Fees;

528   k)  Prejudgement and Post Judgement interest; and

529 .   l)  Such other legal equitable relief as this Court deems just and proper.

530

531        *Plaintiffs demand a trial by jury on all claims.*

532                               Respectfully submitted,
533                               Benjamin Salvio, Individually and as
534                               Administrator of the Estate of Janine Tragesser
535
536
537        By: _____
538                               George L. Garrow, Jr., Esq.
539                               Attorney for the Plaintiffs
540                               Garrow Law Firm, PLLC
541                               10 G Street, NE, Suite 710
542                               Washington, DC 20002
543                               202-248-5080
544                               202-280-1120 fax
545                               ggarrow@garrowandevans.com
546                               DC Bar # 393213
547
548
549   Local Counsel:
550
551   _____
552
553   Paul Lagnese, Esq.
554   Berger & Lagnese
555   310 Grant Street, Suite 720
556   Pittsburgh PA 15219
557   412-471-4300
558   (412) 471-3116 fax
559   paull@bergerlagnese.com
560   PA Bar # 51281